Judge Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>   v.<br><br>CHRISTERFER FRICK,<br><br>                  Defendant. | No. CR21-110RAJ<br><br>DEFENDANT'S MOTION TO SUPPRESS EVIDENCE<br><br>Noted: Friday, November 26, 2021<br><br>EVIDENTIARY HEARING REQUESTED |

## I. RELIEF REQUESTED

Defendant Christerfer Frick moves the court for an order suppressing all evidence obtained during law enforcement's contact with Defendant Christerfer Frick, including evidence obtained during the defendant's arrest on the basis of insufficient probable cause to search his residence.

## II. PROCEDURAL BACKGROUND

On June 23, 2021 the Grand Jury returned a one count Indictment charging Mr. Frick with Possession of Controlled Substances with Intent to Distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). According to the Complaint, the government alleges that, on or about May 17, 2021, Mr. Frick was involved in using the U. S. Mail to mail packages

DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE  – Page 1

**LAW OFFICE OF PAULA T. OLSON**
**4020 North Vassault Street**
**Tacoma, Washington 98407**
**(253) 777-5716-Tel**

containing controlled substances: heroin and fentanyl.[1]  Trial is set for Monday, March 28, 2022.

The basis for the government's arrest was the execution of a search warrant signed by Magistrate Judge Paula L. McCandlis on May 14, 2021. See Exhibit A. The objects of the warrant were the residence of Defendant Chris Frick at 27340 Village Pl NW, Stanwood, Washington and Mr. Frick's person. The warrant was supported by the affidavit of U. S. Postal Inspection Services (USPIS) Inspector Michael Fischlin. The primary evidence purportedly amounting to probable cause to search those places was information produced by an informant, now known as Geordan Edwards. The execution of the search warrant on Mr. Frick's residence took place on Monday, May 17, 2021, and yielded controlled substances, electronic devices, and drug packaging materials. Mr. Frick was not arrested on the day of the search but turned himself in at the Probation Office the following Thursday, May 20, 2021. This charge followed.

### III. FACTUAL BACKGROUND

Sometime in early April 2021, the USPIS opened a joint investigation into a dark web vender known as "santamuerte," operating on the Dark0de marketplace and selling controlled substances by way of the U. S. Postal Service (USPS). The investigation is outlined in the search warrant affidavit authored by Inspector Fischlin and summarized here.

On April 15, 2021, law enforcement placed an undercover order of synthetic heroin (hereinafter referred to as "controlled buy #1"). Ex. A, p.8.  The parcel was first scanned in Granite Falls, Washington and delivered to the undercover address provided by law

---

[1] Mr. Frick is also charged with related violations of the terms of his supervised release under

enforcement. Later forensic analysis revealed that it contained fentanyl and heroin. The sender's name was listed as a Seattle business. *Id.* pp.8-9.

On April 19, 2021, Inspector Fischlin learned from an employee at the Granite Falls Post Office ("PO") that "the parcel had been deposited into the USPS blue collection box outside of the PO." *Id*. at par.22, p.9 (footnote deleted). There is no reference in the affidavit to what parcel is referred to; whether it is the first controlled buy or another parcel. That same employee also reported remembering several similar parcels that "she found odd for several reasons" including the fact that the sender was a Seattle business, not a local business. There is no time frame for this recollection or an explanation of what she considered "odd" about those parcels.

On April 22, 2021 Inspector Fischlin placed a second order for heroin (controlled buy #2) from "santamuerte on White House Market," another dark web site. *Id*. par. 23, p.9. Inspector Fischlin reported that he later received a parcel containing a tan powdery substance and that later analysis showed that it contained fentanyl and heroin. The parcel was first scanned in Arlington, Washington and the sender was a business in Seattle, Washington. *Id.*

On April 24, 2021, a USPS employee at the Granite Falls PO found three flat rate envelopes with similar labels as that on controlled buy #1. A separate search warrant was obtained and one of the parcels was opened. It contained blue pills with "M" on one side and "30" on the other. According to Inspector Fischlin, forensic analysis indicated that the pill contained fentanyl. Inspector Fischlin stated that the intended recipient told him he had ordered the pills from "Vice City" on the dark web. *Id.* par.24, p. 9-10.

---

Case No. CR12-062RSL. That case has been reassigned to this court.

DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE  – Page 3

**LAW OFFICE OF PAULA T. OLSON**
**4020 North Vassault Street**
**Tacoma, Washington 98407**
**(253) 777-5716-Tel**

Security camera footage at the Granite Falls Post Office early on April 24, 2021, showed that a male deposited three flat rate envelops into the mail receptacle and opened a PO Box no. 197, which further investigation identified the user of Box 197 as Geordon Edwards. This male also resembled the picture on a Washington State driver's license with Edwards' name. *Id.* par. 25 at p.10.

On April 29, 2021, Inspector Fischlin stated in paragraph 26 that an USPS employee at the Granite Falls PO contacted him to report that nine flat rate parcels were found in the mail receptacle. A search warrant was obtained. Inspector Fischlin stated the parcels contained pills similar to those in paragraph 24 and similar to those advertised on the dark web as containing oxycodone. *Id.* at p.10-11.

Paragraph 27 stated that on April 28, 2021 in the late evening a male resembling Edwards deposited numerous flat rate parcels and opened his PO Box. *Id*. at p.11. On April 29, 2021, Inspector Fischlin stated in paragraph 28 that he placed a third order (controlled buy #3) for oxycodone pills from the same source on the dark web as before but as of the date of the affidavit (May 14, 2021), nothing had been received. Paragraphs 29 and 30 described Inspector Fischlin's observations and calculations of sales of narcotics on the targeted sites on the dark web. *Id.*

An employee of Granite Falls PO contacted Inspector Fischlin on May 6, 2021. She reported that she saw 10 flat rate envelopes in the mail receptacle. On execution of a search warrant, the envelopes contained pills as described herein as well as tan and white powdery substances. *Id.* at par. 31, pp.11-12. Security footage at that PO on the evening of May 5,

2021 showed a male similar to Edwards' driver's license photo deposited numerous flat rate

parcels in the mail receptacle. *Id.* par. 32, p.12.

Thereafter, Inspector Fischlin reported in his affidavit that a search warrant for

Edwards' residence, person and vehicle was obtained and executed on May 11, 2021. *Id.* at

par. 33, p.12. A search of his person yielded pills as described herein. His residence yielded

"several empty parcels with labels similar to the labels on previously seized parcels [in user

quantities – not distribution amounts]." *Id.* At the residence Inspector Fischlin found a parcel

addressed the undercover name and address he used in the controlled buy described in

paragraph 28 (controlled buy #3). Inspector Fischlin noted that this parcel had been opened

and was empty.

For the first time, Defendant Christerfer Frick's name is mentioned in paragraph 34.

There, Inspector Fischlin stated that the empty parcel of controlled buy #3 corroborated

information from Edwards that he would occasionally open and consume drugs inside parcels

that Frick gave him to mail. *Id.* at p.12. Inspector Fischlin stated four more opened and empty

parcels were also located in Edwards' residence. *Id.*

Paragraph 35 of the affidavit described Edwards' statement to law enforcement. *Id.* at

p.13. In footnote 16 to that paragraph, Inspector Fischlin told the Magistrate Judge that

"Edwards was involved in drug trafficking, used drugs, and the Court should assume that he

had a drug problem." *Id.* fn.16. In sum, Inspector Fischlin stated that Edwards mailed parcels

for Frick that Edwards knew contained drugs. He knew this because he opened some of them

and consumed the drugs therein. Edwards told police that he would obtain the parcels from

Frick's house and that Frick told him to put them in the mail outside his city (Stanwood)

**LAW OFFICE OF PAULA T. OLSON**
**4020 North Vassault Street**
**Tacoma, Washington 98407**
**(253) 777-5716-Tel**

limits. Edwards also reported that he saw large amounts of controlled substances at Frick's house. Finally Edwards said that the last parcel he mailed for Frick was about a week ago and that Frick was suspicious that Edwards was stealing parcels.

Paragraph 36 states that Edwards identified the dark website and that the powdery substances were the same as at Frick's house. *Id.* Edwards described vehicles at Frick's house. He is also accounted for providing access to his phone that is also used by his wife and that Frick's phone number was listed as "Chris." *Id.* par. 37-39, p.13. Inspector Fischlin recounted a text message sent to "Chris" by an unidentified person on May 10, 2021 which read: "So did you find out that I did put those in the mail for you and didn't steal them?" Inspector Fischlin also reported that there was communication between Edwards and Frick on Facebook and between their phones. *Id.* par., 40-41. The affidavit did not disclose what were the contents or subject matter of those Facebook communications or other text messages.

The affidavit then turned to Inspector Fischlin's efforts to corroborate Edwards' allegations about Frick. He started reporting that Frick has a criminal history. *Id.* par.42. He found out there was a quit claim deed filed in Frick's name on the house known to be Frick's residence. He verified that Frick was married. On May 11, 2021 surveillance was conducted at Frick's residence and officers saw vehicles matching the descriptions of those described by Edwards. He verified that Frick receives mail at that residence. *Id.* par. 45, p.13. There was no further corroboration reported to the Magistrate Judge in the affidavit.

Pages 15 through 28 contained descriptions of Inspector Fischlin's training, experience, and opinions about the general habits of drug dealers, drug trafficking on the dark web and use of electronic devices and media. *Id*. These descriptions are continuations from

DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE  – Page 6

**LAW OFFICE OF PAULA T. OLSON**
**4020 North Vassault Street**
**Tacoma, Washington 98407**
**(253) 777-5716-Tel**

similar descriptions on pages one through eight. This makes 21 pages devoted to the Inspector's training, experience and opinions as opposed to probable cause to search Defendant Frick's residence and person.

### III.   ISSUES PRESENTED

The issues presented in this motion are:

1.     Did law enforcement have sufficient probable cause to search Mr. Frick's residence based on the uncorroborated statements of a heretofore unknown informant?

2.      Does the 21 pages describing Fischlin's training, experience, and opinions about drug traffickers, the dark web and use of electronic devices and media substitute for evidence of probable cause?

3.     Is a *Franks* hearing appropriate for intentionally or recklessly misleading or misinforming the Magistrate Judge for the failure of the affidavit to mention:

a. Edwards' criminal history

b. That it was law enforcement that opened the envelopes at Edwards' residence and found them empty.

### IV. ARGUMENT AND AUTHORITIES

**A.     *The Search Warrant Application for Mr. Frick's Residence Failed to Provide Sufficient Indicia of Probable Cause.***

The Fourth Amendment to the U.S. Constitution, amend. IV requires that there be "probable cause, supported by Oath or affirmation." Probable cause has been determined to exist when, based on the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The issuing judge must be provided with sufficient facts from which

DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE  – Page 7

**LAW OFFICE OF PAULA T. OLSON**
**4020 North Vassault Street**
**Tacoma, Washington 98407**
**(253) 777-5716-Tel**

she may draw the inferences and form the conclusions necessary to a determination of probable cause. *United States v. Underwood*, 725 F.3d 1076 (9th Cir. 2013) (citing *United State v. Rubio*, 727 F.2d 786, 795 (9th Cir. 1983).

When evidence of probable cause is lacking, the court's remedy is to suppress any evidence seized, unless the officers relying on the warrant can show good faith. *United States v. Leon*, 468 U.S. 897, 903 (1984). However, the good faith exception is not available when the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923. *See also Greenstreet v. County of San Bernardino*, 41 F.3d 1306, 1309-10 (9th Cir. 1994).

The landmark case of *Illinois v. Gates*, 462 U.S. 213 (1983) held that a "totality of the circumstances" test applies to whether an informant's information satisfies the probable cause requirement. This standard has been articulated in numerous cases, particularly *Ornelas v. United States*, 517 U.S. 690 (1996). Under a totality of the circumstances analysis, "a deficiency in one [area] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *United States v. Stanert*, 762 F.2d 775, 779 (9th Cir. 1985) amended on other grounds by 769 F.2d 1410 (9th Cir. 1985) (citing *Gates*, 462 U.S. at 233; internal quotations omitted). The issuing magistrate judge is not required to determine "that the evidence is more likely than not to be found where the search takes place. . . . The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir. 1991) (alteration in original) (citation and internal quotation marks omitted).

DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE  – Page 8

To assess whether probable cause existed at the time of issuance of the search warrant, the court makes "a common sense determination. *United States v. Hall*, 113 F.3d 157, 159 (9th Cir. 1997). "We are mindful that [b]y reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw, and that [t]o allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning." *United States v. Stanert*, 762 F.2d at 781 (internal quotations omitted).

Here, the only evidence of probable cause that Mr. Frick might have engaged in drug trafficking and that evidence of that will be found at his house comes from Edwards. There is absolutely no other corroborating evidence. Edwards doesn't even tell Fischlin where in Frick's residence that evidence would be located. The surveillance of Frick's residence was for the sole purpose of verifying that law enforcement had the right house. That kind of foresight to verify could and should have extended to producing probable cause and evidence that Frick was engaged in criminal activity. But that did not take place; the alleged probable cause is based only on Edwards' say-so. Because of that, an examination of Edwards' credibility, veracity and reliability must be closely reviewed. We start with the law.

When a search warrant application is based solely on statements from an informant, more caution must be taken. The U. S. Supreme Court in *Alabama v. White*, 496 U.S. 325, 328 (1990) articulated critical factors to be taken into consideration. These include and informant's (1) veracity, (2) reliability and (3) basis of knowledge highly relevant to the inquiry. *Id*. In *United States v. Jennen*, 596 F.3d 594, 598 (9th Cir. 2010), the Ninth Circuit stated a series of facts that should be demonstrated to determine if an anonymous tip is reliable. Those include: (1) the tip must include a range of details; (2) the tip cannot simply

DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE  – Page 9

**LAW OFFICE OF PAULA T. OLSON**
**4020 North Vassault Street**
**Tacoma, Washington 98407**
**(253) 777-5716-Tel**

describe easily observed facts and conditions, but must predict the suspect's future movements; and (3) the future movements must be corroborated by independent police observation." (citing *United States v. Morales*, 252 F.3d 1070, 1076 (9th Cir. 2001) (internal quotation marks omitted); *see also United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006) (adopting the *Morales* standard for probable cause determinations). *See also United States v. Rowland*, 464 F.3d 899, 908 (9th Cir. 2006)("[A]n informant with a proven track record of reliability is considered more reliable than an unproven informant.'). While Edwards was not an anonymous tipster, he was completely unknown to the investigating officers so those factors are instructive.

At the time that Agent Fischlin obtained the search warrant for Mr. Frick's house, all he knew was that Mr. Edwards, a drug addict, got envelopes from Mr. Frick that allegedly contained illegal substances. There was not one shred of actual proof that 1) any of the envelopes seized at Mr. Edwards' residence contained drugs; 2) that any of the envelopes seized at Mr. Edwards' residence came from Mr. Frick; and 3) that Mr. Edwards, a person never known to law enforcement and acting as an informant had no history to support his veracity or reliability. In addition, Mr. Edwards was an active drug user, under arrest for delivering drugs, desperate to get out from under any criminal penalty, and he had numerous illegal pills on his person, all reasons to lie.

But the most damning evidence of Edwards' lack of credibility comes from his criminal history that Inspector Fischlin either failed to obtain or intentionally omitted from the affidavit and the Magistrate Judge's consideration. See Declaration of John Sheeran. Edwards' criminal history included five crimes of dishonesty: Forgery in December 2012

DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE  – Page 10

**LAW OFFICE OF PAULA T. OLSON**
**4020 North Vassault Street**
**Tacoma, Washington 98407**
**(253) 777-5716-Tel**

amended to Attempted Forgery, Theft in July 2016, Theft in January 2016, Theft Third

Degree in August 2015, Theft in the Third Degree in January 2012, and Trafficking in Stolen

Property First Degree in March 2013. Along with those crimes, Edwards has a considerable

history of refusing to comply with laws pertaining to vehicles and dogs, violations of No

Contact Orders and domestic violence from 2010 to October 2, 2021. In all, Edwards has had

at least 25 contacts with law enforcement between February 2010 and October 2021. All of

these facts should have been presented to Magistrate Judge McCandlis, especially since

Edwards was the sole source of "probable cause." These facts were not.   Law enforcement

produced no other independent corroboration or veracity of Mr. Edwards' statements

regarding Mr. Frick. Surveillance at Mr. Frick's residence gave no corroboration of criminal

activity, other than to verify that certain vehicles were parked at his house. Case law holds

that if an informant's criminal history involves dishonesty and renders his statements

unworthy of belief, then probable cause must be analyzed without those statements. *See e.g.*

*Stanert* 762 F.2d 780-81

       Several cases have very similar facts and the results were suppression of seized

evidence where crimes of dishonesty were not told to the issuing magistrate/judge. In *United*

*States v. Hall*, 113 F.3d 157 (9th Cir. 1997), law enforcement arrested Dang, a person who had

supplied cocaine to another. Dang told police that "Ron" was his supplier, later identified at

Defendant Hall. To support the application for a search warrant of Hall's residence, police

presented Dang to the state magistrate who described where Hall lived and what vehicles

would be at his residence. Dang admitted to criminal history and the magistrate learned from

Dang and police that Dang had been convicted of burglary, domestic violence, and larceny

**LAW OFFICE OF PAULA T. OLSON**
**4020 North Vassault Street**
**Tacoma, Washington 98407**
**(253) 777-5716-Tel**

but no one told the magistrate that Dang had also been convicted of making a false statement to police. Those facts were all the evidence presented to the magistrate as probable cause.

The search warrant was obtained and the search of Hall's residence yielded drugs, cash and other evidence of drug dealing. During the hearing on the motion to suppress, Hall showed the district court Dang's conviction for making a false statement to police and proved its omission to the state magistrate. The Ninth Circuit affirmed the district court's grant of the suppression motion and made several observations pertinent here. Id. at 161.

The court stated that "[i]f Dang was not worth of belief, then his statements would not amount to probable cause. How could the trooper tell whether Dang was leading them to his supplier, a competitor, or to an innocent man?" The court cited *United States v. Mendonsa*, 989 F.2d 366, 369 (9th Cir. 1993), holding that "corroboration of innocent facts such as that a man lived at a particular place, had dogs, and drove a particular car, did not adequately corroborate an anonymous tip." 113 F.3d at 159.  The court went on to address the government's argument that Dang incriminated himself by admitting that Hall was his supplier. Mr. Frick expects the government here to make the same argument, which will fail as it did in *Hall.* The court stated that such incriminating statements gave Dang some credibility "but not enough to supply probable cause." *Id.* "His claim that 'Ron' [Hall] was his supplier was more in the nature of trying to buy his way out of trouble by giving the police someone 'up the chain,' than a self-inculpatory statement which also implicated 'Ron.' Finally, the court in *Hall* quoted the U. S. Supreme Court in *Williamson v. United States*, 512 U.S. 594, 559-600 (1994), which in part stated:

> One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature.

**LAW OFFICE OF PAULA T. OLSON**
**4020 North Vassault Street**
**Tacoma, Washington 98407**
**(253) 777-5716-Tel**

.. .
> The fact that a statement is self-inculpatory does make it more reliable; but the fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability.

*Hall, supra* at 160.

The defendant in *United States v. Reeves*, 210 F.3d 1041 (9th Cri. 2000) used the *Hall* decision to support his motion to suppress evidence of a search. There, the informant's criminal history was also not provided to the magistrate judge issuing a search warrant based on his statements. The Ninth Circuit affirmed the district court's denial of Reeves' motion to suppress evidence obtained from the search of his residence because there were no crimes of dishonesty in the informant's criminal history. The court stated that "an informant's criminal past involved dishonesty is fatal to the reliability of the informant's information, and his/her testimony cannot support probable cause." *Id.* at 1045 (citing *United States v. Meling*, 47 F.3d 1546, 1554 (9th Cir. 1995)). The court also found that there was much more evidence of Reeves' criminal activity than the informant's information. *Id.*

The decision in *United States v. Higgins*, 557 F.3d 381,389-90 (6th Cir. 2009) is also almost identical to the instant one. There, the Sixth Circuit held that there was no probable cause for a search warrant when informant was caught with significant amount of drugs, giving him reason to lie; the only corroborating information was the proper address of the defendant, description of motorcycle and knowledge of prior criminal record.

Here, without Edwards' statements about Frick, Inspector Fischlin had absolutely no evidence that Mr. Frick was engaged in any criminal activity. None of the parcels collected at the Granite Falls PO had any connection to Frick; none of the parcels seized at Edwards' residence had any connection to Frick. No magistrate judge would have issued the search

**LAW OFFICE OF PAULA T. OLSON**
**4020 North Vassault Street**
**Tacoma, Washington 98407**
**(253) 777-5716-Tel**

warrant of Mr. Frick's residence or person if that magistrate judge was aware of Edwards'

criminal history.

> **B.** **Fischlin's Training, Experience and Opinions about Drug Traffickers
> cannot Substitute for Evidence of Probable Cause.**

In the decision in *United States v. Underwood*, 725 F.3d 1076 (9th Cir. 2013), the

Ninth Circuit affirmed the district court's suppression of evidence for lack of probable cause.

There, the affidavit supporting the search warrant application was based in part on the

officer's statements of her training, experience and opinions. The court observed in

*Underwood*, 725 F.3d at 1082, "[e]xpert opinion may also be considered in the totality of the

circumstances analysis for probable cause." But for that "opinion to have any relevance, the

affidavit must lay a foundation which shows that the person subject to the search is a member

of the class." *Id.* (citing *United States v. Weber*, 923 F.2d 1338, 1345 (9th Cir. 1990)).

Further, "[c]onclusions that are unsupported by underlying facts cannot be used to establish

probable cause." *See United States v. Cervantes*, 703 F.3d 1135, 1139-40 (9th Cir. 2012)

(affording little if any weight to detective's conclusory statement that, based on his training

and experience, the box in defendant's possession came from a suspected narcotics stash

house).

Here, the affidavit devotes 21 pages out of the total 28 pages to the inspector's

training, experience and opinions. These general beliefs and conclusions have no facts or any

foundation to support those beliefs about Mr. Frick. *See also Brown*, 828 F.3d at 384 ("We

have never held, however, that a suspect's status as a drug dealer, standing alone, gives rise to

a fair probability that drugs will be found in his home.") (internal quotation and citation

omitted).

DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE  – Page 14

**LAW OFFICE OF PAULA T. OLSON**
**4020 North Vassault Street**
**Tacoma, Washington 98407**
**(253) 777-5716-Tel**

The government cannot bootstrap the warrant by the evidence found at Mr. Frick's house. The Ninth Circuit has clearly and repeatedly said that "all data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." *Luong*, 470 F.3d at 903 (citations omitted). The only independent, corroborating evidence is the address, make and model of vehicles parked at Mr. Frick's residence. In all of the cases affirming the trial court's denial of motions to suppress evidence, there is some additional, historical or independent evidence corroborating the informant's information.

### C. A *Franks* Hearing is Necessary to Properly Determine Whether Fischlin Intentionally or Recklessly made False or Misleading Statements or Omissions in Support of the Warrant

A *Franks* hearing determines "the validity of the affidavit underlying a search warrant." *United States v. Norris*, 942 F.3d 902, 909-910 (9th Cir. 2019) (citations omitted). In order for the court to hold a *Franks* hearing, the defendant must make a substantial, preliminary showing that: "(1) the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant, and (2) the false or misleading statement or omission was material, i.e., necessary to finding probable cause." *Id.* (citing *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (citation, alteration, and internal quotation marks omitted)). Once that showing is made, the defendant "must establish both prongs by a  preponderance of the evidence." *Id.* (citing *United States v. Martinez-Garcia*, 397 F.3d 1205, 1214-15 (9th Cir. 2005)).

The first source of information that Fischlin either intentionally or recklessly omitted from the affidavit pertained to the criminal history of Edwards as discussed herein on pages

**LAW OFFICE OF PAULA T. OLSON**
**4020 North Vassault Street**
**Tacoma, Washington 98407**
**(253) 777-5716-Tel**

10 to 11 and will not be repeated again here. Presumably, that information was as easily accessible to Fischlin as it was to the defense. Presumably, Fischlin knew that crimes of dishonesty are critical to assessing an informant's credibility both in support of an affidavit for a search warrant but also as a witness at a later hearing or trial. *See* Fed. R. Evid. 609(a)(2) "for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving – or the witness's admitting – a dishonest act or false statement." Rule 609(b) limits admission of convictions 10 years or more. Here, all of Edwards' convictions for dishonesty are within the 10 year period.

Next, Mr. Frick contends that law enforcement used misleading information to bolster the probable cause in the warrant affidavit to infer that the parcels found at Edwards' residence came from Frick's residence and were opened and empty because Edwards opened and used the contents. Through discovery Mr. Frick has obtained pictures of the search of Edwards' residence and are attached here as exhibits. A review of those exhibits show that the parcels were not opened; that the parcels were opened by law enforcement conducting the search. Also relevant is the Inventory Log of items seized from Edwards' residence that support Mr. Frick's contention. The Search Warrant Photo Log is attached as Exhibit B. There are several examples of these false and misleading statements.

In paragraph 33 of the affidavit (Ex. A, p.12), Fischlin stated as follows: "On May 11, 2021, agents executed a search warrant at Edward's residence and located several empty parcels with labels similar to the labels on previously seized parcels. One of the parcels was addressed to the undercover name an address I provided to the subject Moniker." This

DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE  – Page 16

**LAW OFFICE OF PAULA T. OLSON**
**4020 North Vassault Street**
**Tacoma, Washington 98407**
**(253) 777-5716-Tel**

statement is purportedly supported by pictures of parcels opened at some point in the past by Edwards.

Photographs depicted in Exhibits C through H documented parcels discovered and seized at Edwards' residence. Exhibits C and D show parcels located under and by Edwards' couch and are listed in the photo log as pictures 46 and 47 respectively. Exhibit C is four parcels that appear unopened and are described as "postal supplies under couch." Ex.B, p.5. Exhibit D is another picture of the same couch with a different set of parcels that appear to be empty but never used. They are also described as "postal supplies under couch." By comparing the two pictures, one has to wonder why the same area is so different unless this area had been modified or staged by someone involved in the search.

But the primary issue is that Exhibit C is one of the parcels referred to in paragraph 34 of the affidavit and clearly none of those parcels are opened. Exhibit E is a close up of the parcel referred to in paragraph 34 and is described as "Envelope Mr. Holdem PO 69214, Seattle, WA 98168 unopened." Ex. B, p.5. Next, Exhibit F is a picture of the same Holdem parcel that is now opened, presumably by law enforcement as documented in Exhibit G and described in the photo log as "opened by investigator" and nothing inside it. Therefore, Fischlin's statement that the Holdem parcel was found opened and consumed by Edwards is false and misleading. It cannot be used to support Edwards' contention that he picked up parcels from Mr. Frick containing drugs that he sometimes opened and consumed.

There is more is conflicting evidence presented by comparing Exhibits C, E, F, G, and H. Starting with Exhibit C which shows four unopened parcels under the couch. Next compare that picture to Exhibit H, which shows four opened parcels. Fischlin's affidavit

**LAW OFFICE OF PAULA T. OLSON**
**4020 North Vassault Street**
**Tacoma, Washington 98407**
**(253) 777-5716-Tel**

asserts that the parcels were all found open and empty in an attempt to corroborate Edward's story that he would open the parcels and consume the contents. The photographs tell a different story.  In Exhibit H (photo 52), four parcels that were found unopened under the couch are now opened. Where is the priority parcel depicted in Exhibits C (photo 46) and E (photo 48)? There are only four parcels in Exhibit C and again in Exhibit H, however the priority parcel clearly depicted in Exhibits C and E is not depicted and appears to be missing or altered in Exhibit H. Where did the fifth parcel come from? And where are the drugs that were contained in the unopened parcels? The government's contention is that Edwards obtained envelopes containing drugs from Mr. Frick and then mailed them at Mr. Frick's direction. If this were the case, the unopened envelopes would have contained drugs. Rather, it appears from the pictures and photo log that officers found several unopened envelopes that when opened contained no drugs, one envelope that was open and empty, and no unopened envelopes that contained drugs. Other than the drugs found on Edwards' person, the officers found no drugs at all.

The Holdem parcel is mentioned in the inventory log as pictures 48, 49, 50 and 51. What is not mentioned is where it was found. According to the inventory log, picture 52 only has four named parcels found under the couch. How did the Holden parcel get there; where did one of the other named parcels go; and where was it found?

Here, the photographs provide proof that Agent Fischlin intentionally or recklessly made false or misleading statements in the affidavit supporting probable cause for the search warrant for Mr. Frick's residence. The photographs depict unopened envelopes; no envelopes containing drugs; no envelopes with any indicia that they came from Mr. Frick. There is no

**LAW OFFICE OF PAULA T. OLSON**
**4020 North Vassault Street**
**Tacoma, Washington 98407**
**(253) 777-5716-Tel**

corroborating or independent statement or fact or evidence that connects Mr. Frick to drug trafficking. There was no evidence that a drug user like Mr. Edwards was a reliable source of information, although Agent Fischlin did mention that fact in the affidavit. Further, he failed to mention Edwards' long criminal history including crimes of dishonesty that he readily had available to him. Agent Fischlin knew all this at the time he presented the application for a search warrant but failed to fully and honestly inform the Magistrate Judge. The *Stanert* decision also instructs that omissions can be considered as false statements. 762 F.2d at 781.

In making the initial determination whether a *Franks* hearing is appropriate, Mr. Frick is not required to produce clear proof of deliberate or reckless omission. He can produce that at the hearing itself. *See Stanert, id*. Mr. Frick has made the initial showing of intention and/or reckless misleading, false information and omission of key information in the affidavit and a *Franks* hearing is necessary for Mr. Frick to prove this by a preponderance of the evidence.

## IV. CONCLUSION

For the reasons stated herein, Mr. Frick seeks suppression of all evidence obtained at his residence and statements made immediately thereafter his arrest based on the lack of probable cause throughout the affidavit supporting the search warrant obtained by Agent Fischlin. Mr. Frick further requests an evidentiary hearing to present all of the evidence supporting his motion.

DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE  – Page 19

**LAW OFFICE OF PAULA T. OLSON**
**4020 North Vassault Street**
**Tacoma, Washington 98407**
**(253) 777-5716-Tel**

DATED this 9th day of November, 2021.

                                                       ___/S/ PAULA T. OLSON_____

PAULA T. OLSON, WSBA #11584
Attorney for Defendant Christerfer Frick
Law Office of Paula T. Olson
4020 North Vassault St.
Tacoma, WA 98407
PH:  (253) 777-5716
olsonlaw@nventure.com

                                                       ___/s/ John Sheeran_____

JOHH SHEERAN, WSBA#26050
Attorney for Defendant Christerfer Frick
Law Offices of John Sheeran
705 So. 9th St.
Tacoma, WA 98405
PH: (253) 468-9794
John.sheeran327@gmail.com