Hon. Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHRISTERFER FRICK,

Defendant.

NO. 2:21-cr-00110-RAJ

ORDER DENYING
DEFENDANT'S MOTION
FOR *FRANKS* HEARING
AND MOTION TO SUPPRESS

## I.   INTRODUCTION

THIS MATTER comes before the Court upon Defendant Christerfer Frick's motion to suppress evidence obtained during his contact with law enforcement, including evidence obtained during his arrest on the basis of insufficient probable cause to search his residence.  The defendant also seeks a *Franks* hearing to determine whether United States Postal Inspection Service Inspector Michael Fischlin intentionally or recklessly made false or misleading statements or omissions in support of his application for a warrant.  Dkt. # 29.  Having considered the government's response, Dkt. # 40, the defendant's reply, Dkt. # 42, the files and pleadings herein, the Court **DENIES** the motion.

## II.   BACKGROUND

The defendant was charged on June 23, 2021 in a single-count Indictment with Possession of Controlled Substances with Intent to Distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(a)(1)(A), alleging the offense involved 400 grams or more of a

mixture or substance containing a detectable amount of fentanyl, and one kilogram or more of a mixture or substance containing a detectable amount of heroin.  Dkt. # 1.

The basis for the government's arrest of the defendant was the execution of an arrest warrant signed by Magistrate Judge Paula L. McCandlis on May 14, 2021.  Dkt. # 29-1.  The object of the warrant was the arrest and search of the defendant and his residence.  The warrant was supported by the Affidavit of Inspector Fischlin.  The defendant contends the evidence to support probable cause to search was predicated significantly on information produced by an informant, now known as Geordan Edwards.

Much of what is not in dispute was the investigation of Mr. Edwards and his association with the distribution and acquisition of controlled substances.  His investigation began with an undercover federal agent placing an order for synthetic heroin on a dark web marketplace.  Subsequently law enforcement received a package containing a substance that tested positive for fentanyl and heroin. Dkt. # 29-1.  Although the package listed the sender as a business located in Seattle, it was subsequently determined to have been first scanned in Granite Falls, Washington.  Additional packages were observed by postal officials as displaying a Seattle sender, but later determined to have been mailed from Granite Falls.

Inspector Fischlin placed an additional order for heroin on a second dark web marketplace on April 22, 2021.  The inspector subsequently received a parcel containing a substance that tested positive for fentanyl and heroin.  The listed sender was a business located in Seattle, but postal records indicated the parcel was first scanned in Arlington, Washington.  Dkt. # 29-1.

On April 24, 2021, a Granite Falls employee contacted Inspector Fischlin and reported he had found three parcels in the mail receptacle in the lobby with labels similar to the parcel previously received from the same moniker from which drugs were previously obtained.  A federal search warrant was obtained and executed on one of the parcels.  Inside the parcel were pills, one of which was tested and determined to contain fentanyl.  Agents later interviewed the recipient of the package who told agents he had

ordered drugs from the dark web marketplace. The moniker web address was the same as that used by agents to make an earlier dark web purchase of heroin.

The postal investigation included reviewing security footage from the Granite Falls Post Office that revealed a male depositing mail parcels into the mail receptacle in the lobby. The male used a key to open a PO box and then exited the building. That PO box belonged to Geordan Edwards. Agents also observed that security footage resembled Edwards' Washington State driver's license photograph. Dkt. # 29-1.

On April 29, 2021, Inspector Fischlin was again called by the Granite Falls Post Office who reported finding nine parcels which resembled the seized parcels from April 24, 2021. A federal search warrant was executed on those parcels and, like the last, contained similar illegal substances.

The search warrant affidavit goes on to detail on April 28, 2021 a male resembling Edwards deposited more flat parcels. On May 6, 2021 a Granite Falls postal employee reported seeing ten flat rate envelopes in the mail receptacle, and upon execution of an additional search warrant, the envelopes were found to contain pills containing substances similar to that of the prior envelopes that had been seized. Security footage at that post office showed a male who resembled Edwards' driver's license photograph depositing the parcels at the mail receptacle.

Thereafter, on May 11, 2021, Inspector Fischlin secured a search warrant for Edwards' residence, person, and vehicle. The search yielded numerous pills as previously described imprinted with "M" on one side and "30" on the other side. Up to this point, defendant Frick does not challenge the basis for any searches or warrants regarding the investigation of Edwards. Agents concluded that the number of pills seized were not distribution quantity, but more consistent with drug user quantity.

Inside the residence, agents discovered several empty parcels with labels similar to the labels on the previously seized parcels. One of the parcels was addressed to the undercover name and address that Inspector Fischlin had provided the subject moniker. Nothing was found inside of the parcels. Agents also found opened and emptied packages that appeared to have been originally intended for mailing.

Edwards was interviewed at the Granite Falls Police Station.  There, Edwards admitted that he mailed parcels for Frick and knew the parcels contained drugs because he would open some of the parcels and consume the contents.  Edwards went on to detail various pieces of information about the defendant.  These details included that he retrieved the pre-packaged parcels from Frick located at 27340 Village Place NW, Stanwood, Washington.  He stated that it was Frick who instructed him to place the packages in the mail outside of Stanwood, Washington.  Edwards' admissions included his report of seeing large quantities of powdery substances which he believed to be controlled substances.  He also referenced a vacuum sealer and white paper that contained information about where the parcels should be mailed.  Edwards went on to detail that he had mailed parcels for Frick approximately one week earlier and that Frick believed that Edwards had been stealing parcels. Dkt. # 29-1.

Edwards was also shown a photograph of the subject moniker's profile picture on Dark0de Market, and Edwards recognized it as the powdery substances he had seen in Frick's residence.

During the investigation, Inspector Fischlin located an LG mobile phone belonging to Edwards.  Edwards provided the PIN code to access the phone and told agents that Frick's phone number was saved under the contact name of "Chris," Frick's first name.  Upon examination of the phone, Inspector Fischlin located a text message sent to "Chris" on May 10, 2021 stating, "So did you find out that I did put those in the mail for you and didn't steal them?"  Inspector Fischlin also found multiple additional communications on the phone with "Chris Frick" via Facebook Messenger in April 2021.

The investigation further revealed records obtained from T-Mobile that between March 29, 2021 and April 28, 2021, Edwards' and the phone number saved under the contact "Chris" had communicated approximately 300 times in a combination of phone calls and text messages.  Edwards also divulged during his interview that he knew that Frick had traded a Mazda RX-8 for an Audi sedan.

On May 11, 2021 a federal agent surveilled the Stanwood residence and observed an Audi sedan and gold BMW SUV parked in front of the garage.  These vehicles

matched the description of the vehicles provided by Edwards.  The BMW was registered to Frick's wife and records demonstrated that Frick owned a Mazda RX-8 with the Stanwood residence as his mailing address.

The postal investigation confirmed that Frick received mail at the Stanwood address which was later confirmed to be Frick's most recent address.

On May 14, 2021 Magistrate Judge Paula L. McCandlis authorized a federal search warrant for Frick's Stanwood address.  The search was executed on May 17, 2021 and large amounts of controlled substances were located within an unlocked safe located in the garage.

Frick was interviewed by agents after the search.  He provided a statement following his consent and waiver of his *Miranda* rights.  He admitted where he had received the drugs and stated that he mailed the packages containing the drugs, and also gave packages to other individuals containing drugs to mail, and he received approximately $10,000 in bitcoin as payment.  Dkt. # 40.

After he was indicted, the defendant moved to suppress all evidence obtained during his contact with law enforcement due to claimed errors in how the search warrant was obtained.

### III.    DISCUSSION

Now the Court must determine what, if any, evidence must be suppressed.  The defendant raises two bases to support his motion, the first being Inspector Fischlin's failure to detail Edwards' criminal history and his statement regarding one of the parcels recovered from Edwards' residence.

### A.    The Search Warrant Application's Failure to Detail Edwards' Criminal History.

The centerpiece of the defendant's motion is premised upon an attack on the government's reliance upon Edwards and the failure of the inspector to include Edwards' criminal history in the search warrant application.  The government acknowledges that the "safer course" would have been to detail Edwards' history.  Dkt. # 40.

In support of the defendant's challenge, they argue that Fischlin either failed to obtain or intentionally omitted from the Affidavit Edwards' criminal history, which included attempted forgery, three separate theft convictions and one for trafficking in stolen property in the first degree. Dkt. # 31. They also point out that Edwards had a history of refusing to comply with laws pertaining to vehicles, dogs, no-contact orders, and domestic violence. Dkt. # 29, at 11. Defendant contends that had Judge McCandlis known Edwards' criminal history she would not have credited his statements to support probable cause to arrest and search the defendant.

The Court disagrees. While it may have been negligent for Inspector Fischlin to not provide the judge with Edwards' criminal history, this was not fatal to finding probable cause when considering the "totality of circumstances" test which must be applied in these circumstances. *United States v. Garcia-Villalba*, 585 F.3rd 1223,1233 (9th Cir. 2009).

It is abundantly clear that the Affidavit asserted facts independent of any statements by Edwards. The Affidavit did disclose:

1.       During the search of Edwards' vehicle an LG mobile phone was discovered, and Edwards provided its PIN code. Agents recovered a text message from Edwards one day prior to the defendant's search. Frick's phone number was saved under the contact name of "Chris." The message read: "So did you find out that I did put those in the mail for you and didn't steal them?" Dkt. # 29-1, at 14.

2.       During the search of the LG cell phone Inspector Fischlin found communications with "Chris Frick" via Facebook Messenger in April 2021. Dkt. # 29-1, at 14.

3.       During the investigation, agents repeatedly saw Edwards mailing packages containing drugs. Dkt. # 29-1, at 13-14.

4.       During the search of Edwards' residence, agents recovered empty parcels from inside Edwards' residence, including one addressed to Inspector Fischlin's undercover name. Dkt. # 29-1, at 14.

5.      Records showed that from March 29, 2021 to April 28, 2021, Edwards' phone number and the phone number saved under the contact "Chris" communicated via text and phone calls 300 times.  Dkt. # 29-1, at 16.

6.      Frick was sentenced to 108 months of federal imprisonment and five years of supervised release for conspiracy to distribute controlled substances in January 2013 and was on supervised release at the time of the current offense.  Dkt. # 29-1, at 16.

In addition, the Affidavit disclosed specific information about Edwards and reasons for Judge McCandlis to be cautious of any information obtained from him. These details included references to security footage and parcel deliveries containing drugs, demonstrating he was involved in drug trafficking and that he abused drugs. While Edwards' criminal history might have been useful information for Judge McCandlis' assessment, the Affidavit did not solely rely upon Edwards' credibility.  As noted by the government, the critical convictions set forth in the Affidavit were four gross misdemeanors for attempted forgery and theft.  The Court agrees with the government that these prior convictions were significantly different than the much more serious conviction noted in *United States v. Hall*, 113 F.3d 157 (9th Cir. 1997) which involved making a false report to the police.  As noted above, the Affidavit did not rely solely on Edwards, rather there was an abundance of evidence to support probable cause independent of Edwards' statements.  The Affidavit contained facts establishing an open and visible connection to Frick's involvement in drug trafficking.

Likewise, defendant's reliance upon *United Sates v. Reeves,* 210 F.3d 1041 (9th Cir. 2000) is misplaced.  While Edwards had prior gross misdemeanor convictions involving theft and stolen property, the totality of circumstances clearly demonstrates the agents were able to independently corroborate his statements, thus distinguishing the facts of *Reeves.*

Defendant's reliance upon *United States v. Higgins*, 557 F.3d 381, (6th Cir. 2009) is equally distinguishable from the facts of the defendant.  The government's analysis of that case is on point.  *Higgins* involved limited corroboration of the informant's representations.  In this matter, the agents had a text message between Frick and Edwards

specifically referencing drug trafficking activity and nearly 300 text and cell phone contacts between the two.  Reading these texts did not require any interpretation by Edwards or reliance upon his interpretation of their content; the content was self-evident. Moreover, Frick was on supervised release for a prior drug trafficking conviction.

All of these factors lead this Court to but one conclusion.  While Edwards' criminal past was not disclosed, Judge McCandlis had been advised of Edwards' criminal behavior and reasons to be cautious about his testimony, but she also had more than enough independent evidence connecting Frick to Edwards' criminal drug dealing to support the issuance of the search warrant.

### B.      The Defendant is Not Entitled to a *Franks* Hearing.

The defendant seeks a *Franks* hearing.  In *Franks v. Delaware,* 438 U.S. 154 (1978) the United States Supreme Court held that after a search warrant has been issued, a defendant is entitled to an evidentiary hearing – a "*Franks* hearing" – regarding the veracity of factual allegations in the search warrant affidavit if (1) the defendant makes a "substantial preliminary showing" that the affiant knowingly and intentionally or with reckless disregard for the truth included a false statement in the warrant affidavit, and (2) the allegedly false statement is necessary to the finding of probable cause.  *Franks*, 438 U.S. at 154, 155-156.  The test also applies to material omissions of fact.  *DeMassa v. Nunez,* 747 F.2d 1283, 1293 (9th Cir. 1984), *on reh'g,* 770 F.2d 1505 (1985).

At this juncture, Frick is not expected to show clear proof at the pleading stage, but rather he has the burden "to make a substantial showing that supports a finding of intent or recklessness." *United States v. Gonzalez,* 412 F.3d 1102, 1111 (9th Cir. 2005), *amended on denial of rehearing,* 437 F.3d 854.

The defendant contends he is entitled to a *Franks* hearing because of Inspector Fischlin's failure to include Edwards' criminal history in the search warrant affidavit. As indicated above, this Court has concluded that Inspector Fischlin was negligent in his failure to include Edwards' criminal history in his search warrant application.  There is no evidence to show that he sought to mislead the court or that he intentionally made a false statement or made such a statement with reckless disregard for the truth.  At best,

the defendant has merely articulated conclusory assumptions about why Edwards'
criminal history was not included.

The Ninth Circuit has affirmatively stated that "bare assertions" do not entitle a
movant to a *Franks* hearing. *United States v. Chavez-Miranda,* 306 F.3d 973, 979 (9th
Cir. 2019). To obtain a hearing , the defendant must provide allegations of deliberate
falsehood or reckless disregard for the truth, accompanied by an offer of proof, neither of
which has the defendant provided. *Franks,* 438 U.S. at 171-172. The defendant has
merely provided a copy of the criminal history and made the bare assertion that the
failure to include this must have been intentional or reckless because of the potential it
had to impeach Edwards' credibility. This argument completely ignores the other facts in
the Affidavit independent of Edwards' statements to law enforcement about the
defendant that support a finding of probable cause.

### C.      The Allegations Regarding the Seized Parcels.

The defendant contends that law enforcement used misleading information to
bolster the probable cause in the warrant affidavit to infer that the parcels found at
Edwards' residence came from Frick's residence and were opened and empty because
Edwards opened and used the contents. Dkt. # 29, at 16. In support of this contention,
the defendant argues that two photographs listed in the photo log as pictures 46 and 47
demonstrate modification or staging in the search. This claim is ostensibly made because
Exhibits 2 and 3 show Edwards' couch with two different sets of postal supplies.

A review of the Affidavit demonstrates there was no precise description regarding
the location of the postal supplies. No *Franks* hearing is warranted primarily because
there were no false statements and the omission of the exact location of the supplies was
not material. The government suggests that at best the movement of the evidence for
photographic purposes had no material effect on the warrant and is irrelevant. The Court
agrees. If this were a case where placement of the envelopes was critical to a
determination at issue, *i.e.*, establishing Frick's direct connection to the drugs, it might be
considered material. Whether the packages were placed nearby, on top of or near the
couch are irrelevant and immaterial to establishing probable cause.

The defendant's contention that the parcels recovered from under the couch were unopened appears to be incorrect as Exhibit 2 shows that these parcels were opened when they were recovered.  The Court is persuaded by the government's observation that Exhibit 4 demonstrates that these parcels were opened and are referred to on the photo log as "four opened parcels from under the couch."  The defendant's contention is thus contradicted by the photographs and evidence log.

In light of the foregoing, once again Inspector Fishlin's representation about the package being opened fits far closer to a negligent or mistaken act, but not intentional, reckless, nor material to the determination of probable cause or to warrant a *Franks* hearing.

**D.     The Court Need Not Address Application of the Good Faith Doctrine.**

The Court has made rulings on the validity of probable cause to support the issuance of the search warrant.  Due to those rulings, the Court finds it unnecessary to address application of the Good Faith Doctrine.

## IV.     CONCLUSION

For the reasons stated above, Defendant Frick's motions to suppress evidence and for a *Franks* hearing are **DENIED**.

DATED this 9th day of February, 2022.

The Honorable Richard A. Jones
United States District Judge